**EIBER REALTY CO., Plaintiff-Appellee, v. DUNIFON, Admr., Defendant-Appellant.**

Ohio Appeals, Second District, Franklin County.

No. 4126.   Decided October 8, 1948.

Coolidge, Becker & Wall, Dayton, for plaintiff-appellee.

Hugh S. Jenkins, Atty. Genl., John M. Woy, Asst. Atty. Genl., Columbus, for defendant-appellant.

## OPINION

By MILLER, J.

This is a law appeal to reverse the judgment of the Common Pleas Court of Franklin County, Ohio, which reversed the finding and decision of the Administrator of the Bureau of Unemployment which had denied appellee, the Eiber Realty Company, the unemployment compensation merit rating of 0.9 per cent earned by appellant's predecessor, Arthur Beerman, doing business as the McCook Bowl.

The record in this case disclosed that prior to March 1, 1946, Arthur Beerman conducted two unincorporated businesses; one was the real estate business known as Arthur Beerman Realty Company; the other, a bowling business,

known as McCook Bowl. These businesses were physically separated by several miles and had no connection with each other except that they were owned by the same individual. The character of the two businesses was entirely different. Separate books and records were maintained in separate offices. The businesses were operated separately by entirely different personnel. Separate accounts for each business were sent to the appellant which considered them as one account for which a merit rating of 0.9 per cent was given.*

Early in January, 1946, Beerman decided to transfer his unincorporated real estate business to a corporation to be formed for that purpose. Pursuant to this plan the Arthur Beerman Realty Company was incorporated on January 10, 1946, but because of Beerman's absence from the city the actual transfer was delayed until March 1, 1946. On February 28, 1946, because of the tax situation and on advice of counsel, Beerman decided to transfer the McCook Bowl bowling business to the appellee, the Eiber Realty Company.

Prior to March 1, 1946, the appellee was wholly owned by Arthur Beerman, was operated solely as a real estate holding company and not subject to the unemployment compensation act. On March 1, 1946, all the assets of the realty company were transferred to the Arthur Beerman Realty Company, a corporation. and on the same day all of the assets of the McCook Bowl were transferred to the appellee. The employees of the McCook Bowl, however, were paid by Arthur Beerman through March 1st, although the transfer was effective as of the 1st of March. After completing these transactions the appellee filed its unemployment compensation return using its predecessor's merit rating of 0.9 per cent. This rating was not allowed by the Administrator who increased the rating to 2.7 per cent. An application for a review and redetermination of this rate was filed by the appellee on the ground that the Eiber Realty Company, as successor in interest to Arthur Beerman, doing business as McCook Bowl, was entitled to succeed to the 0.9 per cent merit rating of that enterprise under §1345-4(c)(1) GC. The decision of the Administrator rejected the appellant's contention. The Administrator found that the transfers by Beerman of the two businesses to the two corporations were parts of a single plan and were simultaneous and ruled that since the appellee did not succeed to both of the businesses owned by Beerman at the time of the transfer, it was not entitled to succeed to the 0.9 per cent merit rating. The Common Pleas Court reversed the decision of the Administrator and it is from this judgment that this appeal is taken.

The Administrator held Mr. Arthur Beerman to be a single employer of the real estate business and of the bowling business; that he had only one account with the appellant even though he reported it under an "A" and "B" account. This seems to us to be a proper legal conclusion, for §1345-1-b-(1) GC provides:

"* * * All individuals performing services for an employer of any person in this state who maintains two or more establishments within this state, shall be deemed to be employed by a single employer for the purpose of this act."

Under this section Arthur Beerman was the employer for both the real estate business and the bowling business and his merit rating under the act was established from the combined unemployment records of the two businesses. A separate rating could not be fixed for each business. Therefore neither of these businesses had an individual rating on March 1, 1946. Sec. 1345-4-c-(1) GC provides:

"* * * If an employer shall transfer his business or shall otherwise reorganize such business, the successor in interest is hereby required to assume the resources and liabilities of such employer's account and to continue the payment of all contributions due under this act."

We are of the opinion that the above statute requires that an employer, in order to transfer his business so that his successor in interest acquires and assumes the resources and liabilities of such employer's account, transfer the business in its entirety. The fact that they are two separate businesses and different types of business does not change the situation because he is considered as only one employer and to transfer the account so that one gets credit for the contributions paid on which the merit is based, it is necessary that he transfer all of his business. The rate is determined from all the contributions he makes even though it be on different types of business. His rate is based upon the experience shown by all of his activities. If he only transfers one of his businesses he still retains the merit rate, but the transferee, if he only succeeds to a part of the employer's business, has to take the new rate. Our conclusion on this interpretation of this section of the General Code is fortified by the fact that prior to October 1, 1941, the appellee would be entitled to the relief he is here seeking. This section then provided:

"If an employer shall transfer his business **in whole or in part** or shall otherwise reorganize such business, the successor in interest is hereby required to assume (in proportion to the extent of such transfer, as determined by the commission) the resources and liabilities of such employer's account, and to continue the payment of all contributions due under this act." (Emphasis ours.)

It will be noted that this section provided for a partial transfer of an employer's business which has now been eliminated. It must clearly be presumed that the Legislature intended to abolish a portion of a transfer of an employer's business when it struck out of the act the words "in whole or in part". Counsel for the Administrator properly calls our attention to the fact that even though it so desired the appellant could not establish a merit rate when a partial transfer of the business is made as no separate record is required to be kept by the Administrator for each separate business of an employer. The act considers the employer as conducting only one business even though it may consist of several independent units. The appellee urges that even though we find the statute does not permit partial transfers this does not affect the present situation because the real estate business was transferred, effective March 1, 1946, and that the bowling business was not transferred to the appellee until March 2, 1946, because Beerman paid the employees of the bowling business for the first day of March. However, the record shows that this was done as a matter of convenience as these employees' pay day period included the first day of March. The record definitely shows that the transfer of both businesses took place on March 1, 1946. Mr. David Hartzell, an employee of the appellee, so testified. The appellee claims that it was never the intention to transfer both of the businesses as a single plan, as the corporation to receive the real estate business was organized in January, 1946, and it was not until February 28th that it was decided to transfer the bowling business. These facts are no doubt true, but on February 28 the original plan was modified and at that time the plan was adopted to transfer both businesses which was accordingly done on March 1st.

The construction of this part of the Unemployment Compensation Act presents a new question in this Court, and cases cited by counsel, with one exception, are of little benefit, since the statutes of the other states are not the same as our own. The one case excepted above is that of Employment Security Commission of North Carolina v. News Publishing Co., 45 S.

E. (2d) 391, which case seems to be quite similar to the case at bar. The facts in this case show that the employer operated two separate and distinct departments, one the printing of a newspaper and the other, a job printing business and each department was conducted as a separate business. Each had its own books of account, pay roll records, personnel, etc. The employer had paid all unemployment contributions on the employees in both departments. On September 1, 1946, the employer formed a new corporation for the job printing department and then sought to have a part of his reserve account transferred to the new corporation, it being conceded that if such transfer could be made, the new corporation would succeed to the merit rating then in force for the predecessor employer. The North Carolina statute with reference to transfers, while not worded exactly the same as ours, is substantially the same. The Court in this case held:

Syl. 1. "The statute authorizing transfer of the reserve fund created under Employment Security Law restricts the transfer to those cases where the account is to be transferred in toto, and even then the account can be transferred only to such employing unit as may acquire the organization, trade, or business of another for whom a reserve account had theretofore been established and maintained.

Syl. 2. "A publishing company which maintained a department which published a newspaper and a department conducted as a separate business which operated a job printing house was the 'employer' within statute defining an employer to be any employing unit which in each of 20 different weeks within either current or preceding calendar year employed eight or more individuals, so that printing house which acquired assets only of publishing company used in job printing business was not entitled to a transfer of part of reserve fund created under Employment Security Law pursuant to statute authorizing transfer with consent of employer and approval of Employment Security Commission when business of 'employer' is acquired."

For the foregoing reasons the judgment of the Common Pleas Court is reversed and the order of the Administrator is affirmed.

WISEMAN, PJ, and HORNBECK, J, concur.